Lane, C. J.,
dissenting. I confine my opinion to a single point. The Miami Exporting Company was incorporated in 1803; it immediately assumed the exercise of banking' powers, and continued to claim them, and to exercise some of them uninterruptedly, the period of thirty-nine years. For a part of this period, its notes constituted the largest portion of what was called money in the west. The state, more thaq once, borrowed from it, deposited with it, legislated upon it, and taxed it as a bank. The judi. ciary have at all times until now enforood its rights as a bank, and have placed its affairs in liquidation, under a law applicable to banks only. After this *lapso of time, contemporaneous • construction, and repeated recognition — after this course of life, and death, and burial — I find abundant'reason to hold it to have possessed banking franchises.
Assuming, then, that the plaintiff possessed the powers of a bank, and that this loan was made as such to the defendants, at a rate of interest greater than six per cent., I think the court erred in not instructing the jury that the plaintiffs were entitled to recover from the defendants, if they were beneficially interested in the loan, the amount advanced, and six per cent, interest.
In England, and in some of the Atlantic states, contracts upon usury are called base, corrupt, immoral; are pronounced void by statute, and no recovery ol the money loaned is admissible, because *18 they are regarded as intrinsically wrong, and against policy. If such epithets are used in Ohio, they lose their ordinary meaning. Men may distrust the prudence of those who give or take more than six per cent., but they impute no want of integrity, or anything wicked or immoral; for the ordinary profits of other investment» of capital are (or are supposed to be) at a higher rate, and the profits of money loaned will depend upon them. If there were anything intrinsically wrong in taking more than six per cent., tho legislature would not have authorized certain incorporated companies to receive it, nor would they have authorized its payment on part of our own state loans. So our courts, from the first, have not treated such bargains as illegal, corrupt, and void, but have recognized the contract as binding, and reformed the terms after its own rulos, and given judgment for the principal, and six per cent, interest.
Such, in my opinion, was the duty of the court in the present case. If the plaintiffs possessed tho power to make such a eon-tract, unrestricted by any limitations except the general law relating to interest, they wore entitled, like other plaintiffs collecting such loans, to a judgment for tho principal, and lawful interest. *But if the contract bo void from the mere want of power, and not in consequence of an illegal or immoral consideration, it constitutes tho common caso of money paid upon- a consideration which fails, and the plaintiffs should recover the amount advanced, and simple interest, from those who beneficially received tho money. The decision in the Bank of Chillicothe v. Paddleford, is in no degree inconsistent with this opinion, as that suit was against sureties who were liable on the security only. The court, in the present case, should have instructed the jury to inquire if the defendant was interested in the loan.